

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

October 8, 2019

**BY ECF AND HAND**

The Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

    Re:    United States v. Marcus George, S2 19 Cr. 171 (KMK)

Dear Judge Karas:

The Government respectfully submits this letter in advance of sentencing of defendant Marcus George, currently scheduled for October 16, 2019 at 11:00 a.m., and in response to defendant's sentencing memorandum dated October 2, 2019.

Marcus George is a recidivist drug dealer. He has spent much of his adult life incarcerated in various state prisons, but none of his prior substantial sentences did anything to deter him from continuing to deal heroin. Just after Christmas 2018, days after the joyous birth of a healthy son, Marcus George was busy possessing and conspiring to possess large quantities of deadly narcotics. And when he was caught, red-handed, he did not accept his punishment and try to change his life around. Instead, he fled, and lived as a fugitive for more than 6 weeks as the FBI and City of Newburgh Police Department looked for him. For the reasons set forth below, the only appropriate sentence for George is a substantial incarceratory sentence, namely one within the Stipulated Sentencing Guidelines of 70 to 87 months' imprisonment.

**A.  Instant Offense Conduct**

Marcus George conspired with Jadair Newkirk and others to distribute heroin in and around Newburgh. (Presentence Investigation Report, "PSR," ¶ 7). George sold drugs to a confidential informant on at least two occasions in 2018. (PSR ¶ 8). On December 26, 2018, officers with the Town of New Windsor Police Department stopped a car operated by Newkirk. (PSR ¶ 9). George, who was sitting in the rear passenger seat, fled from the vicinity. (PSR ¶ 9). In front of the seat where George had been sitting the officers found approximately 115 grams of heroin and paraphernalia for packaging heroin. (PSR ¶ 10). After fleeing, George was a fugitive for approximately 6 weeks. (PSR ¶ 11).

During his flight, law enforcement periodically reviewed the known Facebook accounts of George and George's girlfriend. On December 26, 2018 at 7:12 p.m. – hours after he fled from the Town of New Windsor officers – George posted a photograph of a newborn infant, thanking

his girlfriend and bragging about the "newest edition to the family." Agents spoke to George's girlfriend a few days later, who denied knowing where George was. Nonetheless, over the next few weeks, George's girlfriend would periodically post pictures to Facebook of George holding a baby boy and "tagged" George's Facebook account.

On February 13, 2019, law enforcement officers surveilled George's girlfriend's house in Newburgh. After a day of surveillance, the officers observed a man enter into a car outside of the house; the car began driving. The officers pulled the car over and found George. (PSR ¶ 12). George was combative, and was only arrested after the deployment of a K9 dog.

### B. Procedural History

While George was a fugitive, the FBI obtained a warrant for his arrest based on a criminal complaint. George was arrested on February 13, 2019, presented before the Honorable Lisa M. Smith, and ordered detained. On March 11, 2019, a grand jury returned an indictment charging George with possessing, on December 26, 2018, 100 grams and more of heroin with intent to distribute, and the case was assigned to Your Honor. On March 21, 2019, Jadair Newkirk was arrested on probable cause, and charged in a separate criminal complaint with possessing narcotics with intent to sell. In April, a grand jury returned a superseding indictment charging George and Newkirk with conspiracy to distribute 100 grams and more of heroin from 2017 up to and including December 26, 2018; George with two substantive counts of possession of heroin and fentanyl with intent to distribute; and Newkirk with six substantive counts of possession of heroin and fentanyl with intent to distribute. On June 19, 2019, George waived indictment, and pleaded guilty to the instant information, which charges him with conspiracy to distribute 100 grams and more of heroin from 2018 up to and including December 26, 2018.

### C. Presentence Investigation Report

The Probation Office and the parties calculated the offense level as follows: a base offense level of 24, pursuant to U.S.S.G. §§ 2D1.1(a)(5) and (c)(8); and three levels removed for acceptance of responsibility, for a total offense level of 21. (PSR ¶¶ 18–27).

Probation calculates that George has 16 criminal history points, and is Criminal History Category VI, based on the following:

1. On November 9, 2017, the defendant was sentenced to 30 days' imprisonment for Resisting Arrest, in violation of New York Penal Law 205.30. This sentence results in one criminal history point, pursuant to U.S.S.G. § 4A1.1(c). (PSR ¶ 34).

2. On March 31, 2014, the defendant was sentenced to 3 years' imprisonment for Attempted Criminal Possession of a Controlled Substance in the Third Degree, in violation of New York Penal Law 220.16. This sentence results in three criminal history points, pursuant to U.S.S.G. § 4A1.1(a). (PSR ¶ 33).

3. On August 14, 2008, the defendant was sentenced to 30 months' imprisonment for Criminal Possession of a Narcotic Drug in the Fourth Degree, in violation of New York

      Penal Law 220.09.  This sentence results in three criminal history points, pursuant to U.S.S.G. § 4A1.1(a).  (PSR ¶ 32).

4. On August 14, 2008, the defendant was sentenced to 2 years' imprisonment for Criminal Possession of a Narcotic Drug in the Fourth Degree, in violation of New York Penal Law 220.09.  This sentence results in three criminal history points, pursuant to U.S.S.G. § 4A1.1(a).  (PSR ¶ 31).

5. On September 4, 2008, the defendant was sentenced to time served imprisonment for Resisting Arrest, in violation of New York Penal Law 205.30.  This sentence results in one criminal history point, pursuant to U.S.S.G. § 4A1.1(c).  (PSR ¶ 30).

6. On November 14, 2006, the defendant was adjudicated a youthful offender and sentenced to 6 months' imprisonment and five years' probation for Criminal Sale of a Controlled Substance in the Third Degree, in violation of New York Penal Law 220.39. After parole violations, he was resentenced to 1 year imprisonment on December 4, 2007.  This sentence results in three criminal history points, pursuant to U.S.S.G. § 4A1.1(a).  (PSR ¶ 29).

7. Because the defendant committed the offense while on parole for his March 2014 conviction, two criminal history points are added, pursuant to U.S.S.G. § 4A1.1(d). (PSR ¶ 36).

The offense level and criminal history category calculated by Probation lead to a Guidelines range of 77 to 96 months' imprisonment.  (PSR ¶ 75.)

The Probation Office has recommended that the Court sentence the defendant to 60 months' imprisonment.  (PSR p. 19.)

**D.  The Stipulated Guidelines Range, and Certain "Issues"**

The plea agreement signed by the Government and George calculated his criminal history differently than Probation: the agreement assessed George with 12 criminal history points, Criminal History Category V, and thus a Stipulated Guidelines Range of 70 to 87 months' imprisonment.  The agreement incorrectly tallied the number of criminal history points described in the criminal history section of the agreement.  The error was entirely my own: I made an arithmetic error and improperly computed that George had 12 criminal history points rather than 13, the correct number, based on the sentences described in the plea agreement.  The Government apologizes to the Court and George for its mistake, but stands by the plea agreement and the Stipulated Guidelines Range.

George raises a number of other "issues" with the calculation of the Guidelines by Probation and the Government.  (Defendant's Sentencing Submission ("George Memo") at 2–5).

Hon. Kenneth M. Karas  Page 4
October 8, 2019

      First, the Government notes that George has now withdrawn his objection to the application of one criminal history point for his 2008 resisting arrest conviction.[1]

      Second, the Government stands by its plea agreement which states that George is Criminal History Category V (based on the 12 criminal history points erroneously computed in the plea agreement), regardless of Probation's position that his 2006 Youthful Offender conviction counts for purposes of his criminal history. George Memo at 3.

### E.  A Substantial Incarceratory Sentence is Warranted

      Marcus George is a recidivist drug dealer. George is 31, but has spent a large portion of his adult life behind bars for dealing narcotics. This is his fifth felony drug conviction. In the midst of the ongoing national opioid crisis, George continued to sell deadly heroin throughout Orange County and Newburgh, some of the most challenging areas in the state of New York. And in the instant case, George led law enforcement on a dangerous chase for more than a month, trying to evade the authorities at nearly all costs. Though in the colloquial sense George is a career offender, the Government has not established, not quite, that he is so in the legal sense under the Sentencing Guidelines. However, he only missed that status by a narrow window: had the Government established he had been involved in dealing narcotics before December 4, 2017 (10 years since his sentencing for his 2006 Youthful Offender conviction), then he would have been so and faced the associated much higher Guidelines range.

      The personal circumstances of this offense make the consequences more glaring and even more tragic. Law enforcement rarely gets to see the personal and intimate details of a defendant's life; but because of the momentous occasion that Marcus George was blessed with right around December 26, 2018, and the happy Facebook posts by his loved ones, the FBI agents and the Government have learned the details of George's life around that time moment by moment. Instead of trying to reform his ways in the lead-up to his son's birth, George continued to possess large quantities of heroin; and then instead of turning himself in upon his arrest, he evaded capture for weeks.

      As the Court is well aware, the Sentencing Guidelines still provide strong guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). District courts must treat the Guidelines as the "starting

---

[1] Any objection would have been immaterial (George would be Criminal History Category V whether he has 11 or 12 criminal history points). Additionally, and contrary to his initial sentencing memorandum, as a matter of law, George's 2008 resisting arrest conviction should be counted, and assessed a criminal history point, because that conviction is "similar to [the] instant offense." U.S.S.G. § 4A1.2(c)(1)(B). As part of the instant offense, George resisted arrest starting on December 26, 2018, fleeing from the Town of New Windsor officers and becoming a fugitive for 6 weeks before being arrested by application of substantial law enforcement resources. Under the "common sense approach" proposed by the Guidelines, U.S.S.G. § 4A1.2, Application Note 12, both the 2008 resisting arrest conviction and the instant offense indicate his likelihood of "recurring criminal conduct" and are thus similar.

point and the initial benchmark" in sentencing proceedings.  *Gall* v. *United States*, 552 U.S. 38, 49 (2007).  As described *supra*, the Stipulated Guidelines Range is 70 to 87 months' imprisonment.

Only a substantial incarceratory sentence is consistent with the 3553(a) factors, particularly the seriousness of the offense, the history and characteristics of the defendant, and to afford adequate deterrence.  Heroin kills people and destroys communities.  And George knows the consequences of dealing heroin: prison.  His sentences to this point, even a prior sentence of 3 years' incarceration, have not deterred him.  And he commenced the instant offense within just a short period of time of being paroled in January 2018 and continued while on parole, exhibiting again his disrespect for the law.

George's counter-arguments are unpersuasive.

He asserts that the Court should grant him leniency because of his own "drug dependency." George Memo at 5.  But a close review of the PSR undercuts any assertion that George was addicted to narcotics at the time of his instant conspiracy: he told Probation that he has not used PCP since 2011, and that the only other illegal substances he took was some Percocet while a fugitive in 2019.  PSR ¶ 61.  George told Probation he was addicted to alcohol, PSR ¶ 63, but he offers no reasons for how that addiction made him more likely to deal heroin.

He also requests leniency based on his lack of youthful guidance.  George's life undeniably seems difficult, with his father's deportation and a challenging home life.  But that makes his instant offense even more tragic.  George knows what it is like to grow up without a father; and because of his actions, his infant son will have to wait years until his own father can parent him as a free man.

George also cites to numerous health problems, which seem substantial.  But those medical issues do not mitigate the seriousness of George's offense, or his almost constant recidivism.

Marcus George has lived a life of drug dealing, endangering his community and disrespecting the law.  This Court should recognize that pattern, and sentence him in a manner that recognizes his history and characteristics, the nature of the circumstances of the offenses, protects

Hon. Kenneth M. Karas                                                                                       Page 6
October 8, 2019

the public, and affords adequate deterrence: namely, a substantial period of incarceration within the Stipulated Guidelines Range of 70 to 87 months' imprisonment.

                                      Respectfully submitted,

                                      GEOFFREY S. BERMAN
                                      United States Attorney


                                 By: /s Samuel L. Raymond
                                      Samuel L. Raymond
                                      Assistant United States Attorney
                                      (212) 637-6519


cc: Theodore S. Green, Esq. (via ECF)